PEOPLE OF PUERTO RICO, Plaintiff and Appellant, *v.* BORDA
& CALAF, Defendant and Appellee.

No. 6119.   Argued December 19, 1933.—Decided January 12, 1934.

B. *Horton, Attorney General,* and *M. Rodríguez Serra, Assistant
Attorney General,* for appellant. *R. Castro Fernández* for
appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The district court sustained a demurrer to the second
amended complaint in an action for the recovery of taxes
and dismissed the action.   The demurrer, for want of facts
sufficient to constitute a cause of action, specified: that the
action is necessarily based on subdivision (*b*) of section 57
of the Income Tax Act approved August 6, 1925, (Session
Laws, p. 400, 514) and is barred by limitation because it was
commenced more than one year after a certain decision by
the Board of Equalization of February 18, 1924; and that
the action having been commenced more than five years after
the date of a certain return, alleged to have been filed April
11, 1921, is also barred by section 60 of the same law.

In April 1921, Borda & Calaf filed their return for the year 1920. It showed a taxable net income of $188,645.68; a capital of $190,648.26; and accrued profits to the credit of Profit & Loss in the sum of $9,795.81, making a total capital of $200,444.07. The Treasury Department after its original examination of this return, took the net income as reported and fixed the invested capital at $190,648.26 without making the deduction of $9,765.81. The result of this liquidation was a tax of $34,383.96. A subsequent investigation of the books showed, according to a report made in May 1922, an income of $187,719.30, subject to increase by deductions from the net income as follows:

Income Tax_____ $4, 691. 26
125 sections of rails_____ 1, 110. 00

Hence, according to the complaint, the return for 1920 was false, the deductions of these two items having been made wilfully and unlawfully for the purpose of avoiding the payment of the income tax for that year, the net income for that year being $193,520.56 instead of $187,719.30 as reported in the said return. The invested capital according to the books was the same as that specified in the return, namely, $200,444.07. According to the report of the inspectors this capital investment of $200,444.07 was subject to a deduction of $15,499.86 because of withdrawals by the partners, Borda & Calaf, in the respective sums of $1,017.04 and $14,482.82. Upon the basis of a capital investment of $184,944.21 and of a net income of 193,520.56 the Treasurer again calculated the tax fixing it at $38,810.84 and issued an additional receipt for $4,426.88. Notice of this action was given in July 1922. The invested capital of $184,944.21 was the difference between $200,444.07 and the total amount withdrawn by the parties, $15,499.86. Thus the tax for 1920 was assessed in July 1922, at $38,810.84.

Borda & Calaf appealed to the Board of Equalization and asked for a liquidation on the basis of a net income of

$66,825.93 and an invested capital of $505,544.40. The net income tendered as a basis for such liquidations was calculated by deducting losses which plaintiff alleges were incurred in 1921, and the invested capital was the result obtained by adding the value of leased land (of which Borda & Calaf were not the owners) to the amount of more than $300,000.00. In November 1922, the Board of Equalization admitted the item of $1,110.00, value of the rails as a deduction from the net income, fixing the latter at $192,410.56 and the invested capital at $200,444.07. As the result of this action, the treasurer issued a new receipt for $614.28, and notified Borda & Calaf December 15th, 1922. The Board of Equalization denied a motion for rehearing in May, 1923.

Later the Board of Equalization, which had acted under sections 309, 310, 311, 313, *et seq.* of the Political Code, was substituted by a new board which was governed by the provisions of an Act "Creating a new Board of Equalization and Review, and amending sections 308, 310 and 313 of Title IX, Chapter 1, of the Political Code of Puerto Rico, and for other purposes," approved August 2, 1923 (Session Laws, p. 604). In February 1924, Borda & Calaf appeared before this new board and again moved for a rehearing. The new board admitted as a deduction $33,957.67 expended in cultivation and $6,752.25 arising out of a difference of forty five cents a hundred weight in 6,002 sacks of sugar on hand containing two hundred and fifty pounds each. The deduction of $33,957.67 was part of an investment of $87,426.25 in the cost of cultivation alleged to be expenditures incurred in connection with "other concessions" for 1921 and 1922, but not expenses for 1920. The theory of the complaint is that this $33,957.67 was an "expense inventory" or item that could not be deducted from the gross income within the meaning of section 12 of the Law of 1921 and that the action of the board in February, 1924, allowing such deduction was arbitrary and illegal, null and void, because contrary to law and *ultra vires* inasmuch as the board was without power to re-

view the action of its predecessor. Borda & Calaf did not file an additional return within the thirty days prescribed by section 60 of the Law of 1921, and on this ground the complaint also challenges the action of the board in allowing the deduction of $6,752.25 as arbitrary, contrary to law, *ultra vires* and therefore null and void. As a result of the action taken by the new Board of Equalization, the tax, plaintiff alleges, was illegally and arbitrarily fixed at $21,582.88.

In alleged compliance with section 126 of the Political Code the Auditor of Puerto Rico, after an investigation of the facts disclosed by the record, found the amount due to be $38,555.55, that is $255.29 less than the tax assessed by the Treasurer in July, 1922.

The final averment is that, applying the amount fixed by the last decision of the board, namely $21,582.88, to the total that should have been paid, $38,555.55, there is a deficiency of $16,972.67 which Borda & Calaf have not paid in whole nor in part, which is due, liquidated and recoverable. The prayer is for a recovery of the amount of such deficiency with interest and statutory penalties, all in accordance with the provisions of section 82 of the Law of 1925 and in accordance with subdivision (*b*) of section 57 thereof.

By the terms of subdivision (*b*) invoked by the prayer of the complaint, the proceeding there authorized must be commenced within one year from the date of the decision by the board. Section 82 offers no loophole of escape from this statutory bar. If, on the other hand, the action of the new Board of Equalization can be brushed aside as an absolute nullity and the action regarded as brought to recover the amount previously fixed by the Treasurer in accordance with the decision of the former board, then the action was not commenced within the five year period prescribed by section 60 of the Law of 1925.

Appellant, however, relies mainly upon section 61 (*a*) which provides that:

"In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."

The averment as to "a false or fraudulent return with intent to evade tax" specifies two items listed in the return as legitimate deductions, one, an item of $4,691.26, claimed to have been paid as income tax, and the other an item of $1,110.00 as the value of certain rails. The item of $4,691.26 if it had been allowed, would have made a difference of some two or three hundred dollars, an amount more or less equivalent to the excess which the Auditor found in the total amount of the tax as fixed by the Treasurer and the old Board of Equalization. Conceding for the sake of argument that a false return made for the purpose of evading the payment of even so small an amount in a case involving something less than $40,000.00 would suffice to remove the statutory bar, yet in such a case, to say the least, the rule which requires that facts be pleaded to substantiate the conclusion of the pleader should not be relaxed. See *Soto Gras* v. *Domenech,* 42 P.R.R. 506; *Torres* v. *Junta Insular de Elecciones,* 40 P.R.R. 412; and *People* v. *Serrallés,* 40 P.R.R. 217. The vague statement that an investigation of the books by the Treasury Department indicated that $4,691.26 (the amount claimed to have been paid as income tax) should be deducted from the net income is not a very satisfactory reason for the conclusion as to the false and fraudulent character of the claim that this amount had been paid as income tax. Certainly the other item of $1,110.00 later allowed by the old Board of Equalization, notwithstanding the previous investigation and report by the Treasury Department, is not a badge of fraud. Neither the Auditor in his subsequent investigation nor plaintiff in the present action challenges the soundness of the board's decision as to this item of $1,110.00. Yet, aside from the fact that the board apparently agreed with the Treasurer in one instance and took a different

view in the other, the two items stand upon the same footing so far as any basis for the averment of a fraudulent intent is concerned. All things considered, the averment fails to state facts sufficient to justify a conclusion that Borda & Calaf filed a false and fraudulent return with intent to evade payment of their income tax.

Appellant disavows the theory of an action based on any re-assessment by the auditor or on any revision by him of the action taken by the Treasurer or of the decision reached by either Board of Equalization; and says that the only purpose of the averment as to the investigation made by the Auditor "in compliance with section 126 of the Political Code" and the result thereof was to explain why plaintiff sought to recover $16,972.67 only, instead of $17,227.96. Upon any other theory the action was barred by limitation and the judgment appealed from must be affirmed.